## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

<table>
<tr><td>RHETH A. F.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>1:21CV141</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>MARTIN J. O'MALLEY,</td><td>)</td><td></td></tr>
<tr><td>Commissioner of Social</td><td>)</td><td></td></tr>
<tr><td>Security,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.[1]</td><td>)</td><td></td></tr>
</table>

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rheth A. F., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 14 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 17 (Plaintiff's Brief); Docket Entry 18 (Commissioner's

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Memorandum); Docket Entry 20 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 356-63), alleging a disability onset date of November 6, 2007 (see Tr. 343). Upon denial of that application initially (Tr. 135-42, 172-75) and on reconsideration (Tr.143-50, 177-80), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 181-82). Plaintiff (proceeding pro se) and a vocational expert ("VE") attended the hearing. (Tr. 108-22.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 151-67.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 168-71, 236), because the ALJ's "decision [1]] d[id] not evaluate the opinion of [Plaintiff]'s treating orthopedist, Richard Ramos, M.D., that [Plaintiff wa]s unable to work" (Tr. 169 (citing Tr. 632, 638, 642, 645)), 2) "reference[d Plaintiff]'s consistent use of a single point cane for ambulation, but . . . d[id] not evaluate the medical necessity of the assistive device" (id.), and 3) "d[id] not evaluate Acquiescence Ruling 15-1(4) in the evaluation of Listing 1.04A" (Tr. 170). As a result, the Appeals Council ordered the ALJ to "obtain evidence from a medical expert [('ME')] related to the nature and severity of and functional limitations resulting from [Plaintiff]'s impairment" (id.), as well as to "offer [Plaintiff] an opportunity for a [new] hearing, take

2

any further action needed to complete the administrative record[,] and issue a new decision" (Tr. 171).

A different ALJ convened a new hearing, which Plaintiff, his attorney, an ME, and a new VE attended. (Tr. 40-84.)[2] Following that hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 16-39.) The Appeals Council later denied Plaintiff's request for review (Tr. 5-10, 355, 542-43), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2013.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of November 6, 2007 through his date last insured of December 31, 2013.

---

[2] During the hearing, Plaintiff attempted to amend his alleged onset date from November 6, 2007, to June 23, 2012, the day after the state agency denied a previous application by Plaintiff for DIB. (See Tr. 45-46.) The ALJ responded, "I think that's fine, and I will accept that onset date and proceed from there, and to consider the full period." (Tr. 46 (emphasis added).) The ALJ's statement that he "w[ould] accept that onset date" (id.) suggests that he allowed Plaintiff's amendment of the onset date to June 23, 2012, but the ALJ's remark that he would "consider the full period" (id.), by contrast, implies that he would evaluate the "full period" from Plaintiff's original alleged onset date, November 6, 2007, to his date last insured, December 31, 2013. Consistent with the latter interpretation, the ALJ's decision covers the entire period from November 6, 2007, to December 31, 2013. (See Tr. 22, 32.) Accordingly, this Recommendation will also consider the period from November 6, 2007, to December 31, 2013.

3

3.    Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease, degenerative joint disease, facet disease, diabetes mellitus type 2, obesity, polyneuropathy, hypertension, coronary artery disease with residual effects of past myocardial infarction, and ischemic heart disease.

. . .

4.    Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . . except he can lift and carry a maximum of ten pounds, and push and pull the same.  He can sit for up to six hours, stand and walk for up to two hours, and uses a cane for ambulation.  He can occasionally use ramps and stairs, balance, stoop, kneel, and crouch.  He can frequently reach, handle, finger, and feel bilaterally. He can have no exposure to workplace hazards such as unprotected heights, dangerous machinery, or ladders, ropes or scaffolds.  He can have no exposure to extremes of heat or cold.

. . .

6.    Through the date last insured, [Plaintiff wa]s unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from November 6, 2007, the

4

alleged onset date, through December 31, 2013, the date
last insured.

(Tr. 22-32 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard."  Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of

5

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

6

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

7

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Case 1:21-cv-00141-WO-LPA   Document 21   Filed 01/26/24   Page 8 of 36

does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's RFC assessment fails to establish the actual extent to which the sedentary occupational base is eroded by [Plaintiff]'s need to use a cane because the ALJ failed to evaluate whether [Plaintiff] requires a cane for balance because of significant involvement of bother [sic] lower extremities or to discuss why his reported symptom-related need to use a cane for

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

both standing and balance while walking can or cannot reasonably be accepted as consistent with the medical and other evidence" (Docket Entry 17 at 4 (bold font and block formatting omitted); <u>see also</u> Docket Entry 20 at 2-3);

2) "[t]he ALJ violated 20 C.F.R. § 404.1527(b) & (c) and Social Security Ruling 96-8p[, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ('SSR 96-8p')] by failing to assign weight to medical opinions of treating pain management specialist Dr. Ramos, failing to determine whether those treating source medical opinions [we]re entitled to controlling weight, and by failing to explain why the opinions were not adopted" (Docket Entry 17 at 8 (bold font and block formatting omitted); <u>see also</u> Docket Entry 20 at 4-5);

3) "[t]he ALJ relied on an incorrect regulatory framework when he assessed [Plaintiff]'s [RFC]" (Docket Entry 17 at 12 (bold font and block formatting omitted)); and

4) "[t]he ALJ committed a reversible error by relying on limited daily activities performed by [Plaintiff] as support for the hearing decision's [RFC] assessment without considering the limited extent to which [Plaintiff] can perform such activities" (<u>id.</u> at 14 (bold font and block formatting omitted); <u>see also</u> Docket Entry 20 at 5-6).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 18 at 5-16.)

### 1. Plaintiff's Cane Use

In Plaintiff's first issue on review, he maintains that "[t]he ALJ's RFC assessment fails to establish the actual extent to which the sedentary occupational base is eroded by [Plaintiff]'s need to use a cane because the ALJ failed to evaluate whether [Plaintiff] requires a cane for balance because of significant involvement of bother [sic] lower extremities or to discuss why his reported symptom-related need to use a cane for both standing and balance while walking can or cannot reasonably be accepted as consistent with the medical and other evidence." (Docket Entry 17 at 4 (bold font and block formatting omitted); see also Docket Entry 20 at 2-3.) More specifically, Plaintiff argues that, "[w]hen explaining the RFC finding regarding use of a cane, the ALJ failed to acknowledge [Plaintiff]'s testimony that[,] in addition to using cane [sic] when walking, he uses the cane both while standing and to assist his balance because of unsteadiness when walking." (Docket Entry 17 at 7 (citing Tr. 26).) According to Plaintiff, "[Social Security R]uling [96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 (July 2, 1996) ('SSR 96-9p') ] specifies that 'the occupational base for an individual who

11

must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.'" (Id. at 6 (quoting SSR 96-9p, 1996 WL 374185, at *7).) Those contentions miss the mark.

"To find that a hand-held assistive device is medically required, there must be <u>medical documentation</u> establishing the need for a hand-held assistive device to aid in walking or standing, and <u>describing the circumstances for which it is needed</u> (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Moreover, "the legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'" <u>Spaulding v. Astrue</u>, 379 F. Appx 776, 780 (10th Cir. 2010).

The ALJ provided the following explanation for his inclusion of "a cane for ambulation" in the RFC (Tr. 25):

> [Plaintiff] testified that he uses a cane mainly for pain when he takes steps. He has used the cane since sometime near to his original onset date and continued to use it through the date of hearing. This is generally consistent with the medical evidence and [the ALJ] has included the use of a cane in the [RFC].

(Tr. 26.)

The ALJ did not err in limiting Plaintiff's cane use to ambulation (see Tr. 25), because Plaintiff has failed to produce

12

"medical documentation" of his "need for a [cane]" and "the circumstances for which it is needed," SSR 96-9p, 1996 WL 374185, at *7. Although Plaintiff testified that an unnamed "doctor prescribed [his cane] . . . within the first year or two after [his October 2007] injury" (Tr. 50), he has not produced any evidence of that prescription (see Tr. 544-77, 627-710, 776-77, 968; see also Docket Entries 17, 20). Moreover, although Plaintiff's treating orthopedist Dr. Ramos consistently noted Plaintiff's use of a cane (see Tr. 653, 655-56, 662, 671, 673-74, 676-77, 686), significantly, Dr. Ramos did not offer an opinion regarding the medical necessity of Plaintiff's cane (see Tr. 627-710).

Those considerations preclude relief on this assignment of error. See Morrison v. Saul, No. 3:20CV223, 2021 WL 795190, at *4 (W.D.N.C. Mar. 2, 2021) (unpublished) (rejecting the plaintiff's argument that ALJ erred by failing to include cane in RFC, "because no provider ever stated that [the plaintiff] needed the cane, only that he sometimes presented with one"); Thomas H. v. Berryhill, No. 4:17CV41, 2018 WL 10806837, at *8 (W.D. Va. Aug. 27, 2018) (unpublished) ("The mere fact that [the plaintiff] sometimes presented to clinic appointments with a cane [] does not establish his underlying medical need to use that device. Cf. Craig, 76 F.3d at 590 n.2 ('There is nothing objective about a doctor saying, without more, "I observed my patient telling me she was in pain."').", recommendation adopted sub nom. Harris v. Berryhill,

13

2019 WL 1372164 (W.D. Va. Mar. 26, 2019) (unpublished).
Furthermore, Plaintiff's subjective testimony that he used a cane
"when [he] walk[ed] . . . [and] when [he was] just standing up"
(Tr. 61), "[m]ainly for the pain when [he] took steps" (Tr. 51),
and to "aid in [his] balance, because . . . [he] was so
unsteady . . . when [he] did try to walk" (id.), does not
constitute "medical documentation" sufficient to establish the
medical necessity of his cane, SSR 96-9p, 1996 WL 374185, at *7.
See Hale v. Kijakazi, No. 1:20CV277, 2021 WL 3625319, at *2
(W.D.N.C. Aug. 16, 2021) (unpublished) (holding that "[s]ubjective
claims . . . are insufficient" to establish medical documentation
of cane necessity required by SSR 96-9p (internal quotation marks
omitted)); Morrison, 2021 WL 795190, at *4 ("[The plaintiff] offers
no medical evidence regarding his cane or the circumstances he
needs it for. Instead, he offers his own lay testimony and cites
examination findings regarding his lower extremities. But that
evidence merely describes [his] symptoms — it does not provide
medical documentation establishing that [he] needed the
cane . . . ." (internal parenthetical citations omitted)); Thomas
H., 2018 WL 10806837, at *8 ("[The plaintiff]'s subjective belief
that he needs a cane to walk and for stability due to muscle
atrophy in the right leg and pain in his legs and hips is not
acceptable 'medical documentation' that could establish his
underlying medical need to use a cane to aid in walking or

standing." (quoting SSR 96-9p, 1996 WL 374185, at *7) (some internal quotation marks and citations omitted)).

In light of the absence of "medical documentation" establishing either the medical necessity of Plaintiff's cane or the circumstances for which Plaintiff needed it, SSR 96-9p, 1996 WL 374185, at *7, the ALJ labored under no obligation to include cane usage <u>at all</u> in the RFC, and certainly did not err by according Plaintiff the benefit of the doubt and including the "use[ of] a cane for ambulation" in the RFC (Tr. 25). Plaintiff's first issue on review thus fails as a matter of law.[7]

## 2. Opinions of Dr. Ramos

Next, Plaintiff maintains that "[t]he ALJ violated 20 C.F.R. § 404.1527(b) & (c) and SSR 96-8p by failing to assign weight to medical opinions of treating pain management specialist Dr. Ramos, failing to determine whether those treating source medical opinions [we]re entitled to controlling weight, and by failing to explain

---

[7] To the extent Plaintiff contends that the ALJ erred by failing to specifically determine the extent to which Plaintiff's cane use eroded the sedentary occupational base (<u>see</u> Docket Entry 17 at 5-8), that argument also fails. SSR 96-9p advises that, in situations involving the use of hand-held assistive devices, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the [claimant]'s ability to make an adjustment to other work," SSR 96-9p, 1996 WL 374185, at *7. The ALJ here did precisely that. He asked the VE whether jobs existed in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, (which included the requirement that Plaintiff "use a cane for ambulation") (Tr. 78), and the VE responded that such individual could perform the jobs of order clerk, document preparer, and final assembler (<u>see</u> Tr. 78-79). The ALJ thereafter adopted the VE's testimony and found, at step five of the SEP, that Plaintiff did not qualify as disabled because he remained able to perform those same jobs. (<u>See</u> Tr. 32.)

why the opinions were not adopted." (Docket Entry 17 at 8 (bold font and block formatting omitted); see also Docket Entry 20 at 4-5.) In particular, although Plaintiff acknowledges "[t]he ALJ found that opinions expressed by . . . Dr. Ramos[] that [Plaintiff] was at various times unable to work or . . . unable to ever attain gainful employment[ we]re opinions on issues reserved to the Commissioner that [we]re not entitled to any weight" (Docket Entry 17 at 9 (citing Tr. 30)), Plaintiff argues that "Dr. Ramos made other statements in his treatment notes that the ALJ did not address" (id.; see also id. at 9-11 (describing Dr. Ramos's statements that Plaintiff believes constituted medical opinions the ALJ failed to address (citing Tr. 641, 654, 657-58, 662, 664, 679, 681, 684, 705, 1014, 1062))). In Plaintiff's view, those "statements . . . are medical opinions because they reflect Dr. Ramos'[s] judgments about the nature and severity of [Plaintiff]'s medical impairments, including his symptoms and prognosis" (id. at 11-12), and "[t]h[o]se medical opinions . . . support[ed] Plaintiff]'s claim of disability because they indicate[d] that his pain symptoms continued to be severe and ongoing despite the pain management treatment he received" (id.). Plaintiff's arguments fall short.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R.

§ 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added). Finally, statements from medical sources (and even treating sources) that a claimant qualifies as disabled or cannot work do not constitute "medical opinions as described in [§ 404.1527(a)(1)], but are,

17

instead, opinions on issues reserved for the Commissioner" and do not warrant controlling weight. 20 C.F.R. § 404.1527(d).[8]

Plaintiff makes the following argument regarding Dr. Ramos's statements that Plaintiff construes as medical opinions that the ALJ failed to weigh:

> [Dr. Ramos] stated in February 2008 that "[i]f Dr. Jones does not recommend surgery then I think [Plaintiff] is going to be stuck between a rock and a hard place and he is going to need to live with a certain component of his pain" (Tr. 641). Dr. Ramos stated in July 2008 that "[i]n good faith I am trying to treat [Plaintiff's] pain. [Discontinue] Opana ER since it is really not helping" (Tr. 654). He stated in November 2008 that "[u]nfortunately, none of my injections have helped. If Dr. Jones is recommending surgery then I think this is the next step for [Plaintiff] to proceed with unless he just wants to manage his pain with medicines" (Tr. 657).
>
> Dr. Ramos stated in February 2009 that "[u]nfortuneately [sic], again [Plaintiff] is not doing well. He needs to follow up with Dr. Jones to see if there is anything he would recommend from a surgical standpoint, otherwise, I think [Plaintiff] will have to live with a certain component of his pain" (Tr. 658). In November 2009, Dr. Ramos discontinued prescription of Opana, stating that "it is not helping" (Tr. 662).
>
> Dr. Ramos indicated in December 2009 that Joyce [sic] had asked if there was any stronger pain medication that [sic] Opana 10mg IR (Tr. 664). [Dr. Ramos] stated in response that "[u]nfortunately, there is not. I had [Plaintiff] on the extended release in the past and he really did not notice a big difference, that is why he is

[8] For claims filed on or after March 27, 2017, the Commissioner has significantly amended the regulations governing opinion evidence. The new regulations provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. As Plaintiff filed his claim for DIB prior to March 27, 2017 (see Tr. 356-63), this Recommendation has analyzed Plaintiff's claim pursuant to the treating physician rule set out above.

currently just on the immediate release.  In good faith I am trying to treat his pain" (*Id.*).

Dr. Ramos stated in March 2012 that Joyce [sic] "really does appear to be stable on this medication" (Tr. 677). But Dr. Ramos stated in March 2012 that "[w]e have really just been trying to manage his pain" (Tr. 679).  In May 2012, Dr. Ramos noted that there were production issues with the company that manufactures Opana and that "it has really disrupted [Plaintiff]'s pain management.  He actually has been on multiple medications and none have really worked as well as the Opana, but are having issued [sic] getting it" (Tr. 681).

Dr. Ramos stated in May 2012 that Nucynta was giving [Plaintiff] "better pain control," but [Dr. Ramos] also stated that "I understand it is not lower than he would obviously like" (Tr. 684).  In August 2013, Dr. Ramos stated that he would refer [Plaintiff] for a second opinion from another pain specialist and that "I have never denied that he is experiencing pain" (Tr. 705).

In July 2017, Dr. Ramos stated that "medial branch blocks in [Plaintiff's] lower back really did not do anything" (Tr.1062).   Dr. Ramos stated in July 2018 that [Plaintiff]'s pain "is something that he may have to manage unfortunately" (Tr. 1014).

(Docket Entry 17 at 9-11 (emphasis and spaces in citations added).)

To begin, the statements by Dr. Ramos emphasized above do not qualify as "medical opinions."  Under the regulations, "medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2) (emphasis added) (version eff. until Mar. 26, 2017).  In contrast to that definition, Dr. Ramos's remarks largely

19

memorialize Plaintiff's <u>subjective</u> statements about his pain level (<u>see</u> Tr. 641, 658, 681, 684, 1014) and the efficacy of pain medications and injections (<u>see</u> Tr. 654, 657, 662, 664, 677, 681, 684, 1062), or discuss Plaintiff's treatment options (<u>see</u> Tr. 641, 657, 1014), and offer neither <u>judgments</u> regarding the severity of Plaintiff's impairments, nor <u>functional restrictions</u> caused by those impairments. <u>See</u> <u>Flores v. Colvin</u>, No. 1:13CV513, 2016 WL 831941, at *6 (M.D.N.C. Feb. 29, 2016) (unpublished) (Webster, M.J.) ("[The physician] determined that [the p]laintiff had resistance to flexion/extension of the elbow joints, positive bilateral straight leg raise tests at less than 30 degrees, and reduced knee range of motion. . . . [The physician]'s assessment[s were] not [] medical opinion[]s . . . [but rather] merely physical examinations. The assessments <u>did not provide an opinion about how [the plaintiff]'s symptoms affect her ability to function</u> . . . ." (emphasis added) (internal quotation marks and citations omitted)), <u>recommendation adopted</u>, 2016 WL 3102023 (M.D.N.C. June 2, 2016) (unpublished) (Schroeder, J.); <u>Rivera v. Colvin</u>, No. 5:11CV569, 2013 WL 2433515, at *5 (E.D.N.C. June 4, 2013) (unpublished) (finding physician's "report [that] <u>describes [the] plaintiff's complaints</u> . . . [of] fairly disabling pain in her neck and . . . pain [] worse with sitting," and that notes, "in a section marked plan . . . [that the physician] will wait until after [the plaintiff] has a surgical evaluation[ and, i]f she

20

elects conservative treatment[, the physician] will consider a cervical [epidural steroid injection], physical therapy and medications . . . <u>does not include a medical opinion as to [the] plaintiff's functional limitations</u>," as well as that "the ALJ was not required under [SSA] regulations to expressly state the weight he was applying to the treatment notes" (emphasis added) (internal quotation marks and brackets omitted)); <u>Leovao v. Astrue</u>, No. 2:11CV54, 2012 WL 6189326, at *6 (W.D.N.C. Nov. 14, 2012) (unpublished) ("[The p]laintiff argues that the ALJ's decision should be remanded because he did not properly consider [a physician]'s opinion that [the p]laintiff's poor pain control impeded his return to work. . . . While the ALJ did not mention [the physician]'s statement that [the p]laintiff should see a pain specialist because pain control was impeding his return to work, the ALJ is not tasked with the impossible burden of mentioning every piece of evidence that may be placed into the [a]dministrative [r]ecord. . . . <u>[The physician] did not provide an opinion regarding the extent of [the p]laintiff's pain-related limitations</u>. Consequently, [the physician]'s <u>statement</u> about pain management does not cast doubt on the ALJ's RFC assessment." (emphasis added) (internal quotation marks and citations omitted)), <u>recommendation adopted</u>, 2012 WL 6186824 (W.D.N.C. Dec. 12, 2012) (unpublished); <u>Money v. Astrue</u>, No. 5:09CV42, 2009 WL 7449241, at *6 (W.D.N.C. Dec. 9, 2009) (unpublished) ("[The p]laintiff asserts

that the ALJ should have considered the statements by her treating rheumatologist . . . that [Plaintiff] was severely restricted in physical and social activities due to generalized weakness and pain, and that she was unable to work in any capacity at this time. A review of [the rheumatologist]'s notes, however, reveals that these statements were not made by [the rheumatologist]. Rather, these statements constitute [the rheumatologist]'s memorializations of [the p]laintiff's social history, as reported to him by [the p]laintiff. [The rheumatologist]'s recording of [the p]laintiff's reports are not medical source opinions entitled to controlling weight." (emphasis added) (internal quotation marks and citations omitted)), aff'd, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011) (unpublished).

Even assuming, arguendo, that any of Dr. Ramos's above-described statements qualified as "medical opinions," the ALJ's failure to expressly weigh those statements constitutes harmless error under the factual circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Here, the ALJ expressly acknowledged Plaintiff's severe pain at step two by finding Plaintiff's degenerative disc disease, degenerative joint disease, and facet disease severe impairments

22

(see Tr. 22), specifically discussed Dr. Ramos's treatment and findings in the ALJ's narrative explanation of the RFC (see Tr. 26-28), and provided significant restrictions in the RFC to account for Plaintiff's pain, including a limitation to just 10 pounds of lifting/carrying/pushing/pulling, a restriction to only two hours of standing and walking in an eight-hour workday, and an allowance of a cane for ambulation (see Tr. 24-25).

Notably, Plaintiff has not offered any argument how further consideration of Dr. Ramos's statements by the ALJ would have resulted in a different outcome in Plaintiff's case. (See Docket Entries 17, 20.) Accordingly, the Court should decline remand on this ground. See Hooker v. Colvin, No. 5:15CV478, 2016 WL 4940197 (E.D.N.C. Sept. 16, 2016) (unpublished) (finding ALJ's error in not weighing physician's "statement that [the] plaintiff's knees are getting worse and certainly are limiting . . . was harmless[, because] . . . the ALJ's determinations that [the] plaintiff is capable only of light exertional work; that she is limited to standing and walking only for four hours; and that she can bend, stoop, kneel, crouch, and crawl only on an occasional basis, align with [the physicians]'s general opinion that [the] plaintiff's knees are limiting" (internal quotation marks omitted)); Hose v. Colvin, No. 1:15CV662, 2016 WL 1627632, at *4-5 (M.D.N.C. Apr. 22, 2016) (unpublished) ("[T]o the extent the radiologist's interpretation of the MRI constitutes a 'medical opinion,' any

23

failure by the ALJ to expressly indicate the weight she afforded to that opinion constitutes harmless error under the circumstances presented by this case. . . . [T]he ALJ's decision accommodated the radiologist's opinion[, because] . . . the ALJ found at step two of the SEP that [the p]laintiff suffered from severe . . . lumbar degenerative disc disease, and restricted [the p]laintiff to light work . . . with a sit-stand option and significant postural limitations. Given [the p]laintiff's failure to explain how any further commentary by the ALJ about the equivocal comments of the MRI reviewer plausibly could have affected the outcome of the case, the [c]ourt should decline to remand on this ground." (internal quotations marks and citations omitted)), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (unpublished) (Biggs, J.); Mitchell v. Astrue, No. 2:11CV56, 2013 WL 678068, at *5 (W.D.N.C. Feb. 25, 2013) (unpublished) (deeming harmless error the ALJ's failure to weigh "[a physician]'s statement that the [p]laintiff probably does have a great deal of pain and loss of stamina due to his back condition," because "ALJ acknowledged that the [p]laintiff experienced some degree of pain and included limitations in his RFC due to his back condition").

Put simply, Plaintiff's second assignment of error does not establish a basis for remand.

24

### 3. Incorrect Regulatory Framework

Plaintiff's third issue on review contends that "[t]he ALJ relied on an incorrect regulatory framework when he assessed [Plaintiff]'s [RFC]." (Docket Entry 17 at 12 (bold font and block formatting omitted).) According to Plaintiff, the United States Court of Appeals for the Fourth Circuit has "found that an ALJ 'relied on an incorrect regulatory framework when he assessed [the plaintiff]'s RFC[,]' because that ALJ 'did not cite to 20 C.F.R. § 416.945, . . . [a r]egulation[ ] that . . . explains how ALJ's [sic] should assess a claimant's RFC,' [and] did not 'cite to SSR 96-8p, . . . [which] provides guidance on how to properly evaluate and [sic] RFC,'" but rather based the "RFC assessment . . . 'entirely on [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")] and [Social Security Ruling 16-3p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")], which set out the process ALJs use to evaluate the intensity and persistence of [a claimant's] symptoms.'" (<u>Id.</u> at 12-13 (internal quotation marks omitted) (quoting <u>Dowling v. Commissioner of Soc. Sec. Admin.</u>, 986 F.3d 377, 387 (4th Cir. 2021)).) Plaintiff notes that the <u>Dowling</u> court found that, because "'an RFC assessment is a separate and distinct inquiry from

25

a symptom evaluation, [ ] the ALJ erred by treating them as one and the same.'"   (Id. at 13 (quoting Dowling, 986 F.3d at 387).) Plaintiff maintains that, "like the *Dowling* ALJ," "the ALJ in this case cited SSR 16-3p and 20 C.F.R. [§] 404.1529, the regulation titled 'How we evaluate symptoms, including pain' [b]ut . . . did not cite to 20 C.F.R. § 416.1545 [sic], titled 'our [sic] [RFC],' or SSR 96-8p." (Id. (citing Tr. 19) (internal parenthetical citations omitted).)   Those arguments miss the mark.

Contrary to Plaintiff's arguments, the ALJ here did cite to the correct standards governing the assessment of RFC.   Although Plaintiff focuses on one page of the ALJ's decision to fault the ALJ for failing to cite the proper standards (see Docket Entry 17 at 12-13 (citing Tr. 19)), Plaintiff ignores the following recitation by the ALJ of the appropriate standards:

> Before considering step four of the [SEP], the [ALJ] must first determine [Plaintiff]'s [RFC] (20 CFR 404.1520(e)). An individual's [RFC] is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.   In making this finding, the [ALJ] must consider all of [Plaintiff]'s impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

(Tr. 21 (emphasis added).)

In light of the above-quoted paragraph, the ALJ did not err under Dowling, and Plaintiff's third issue on review falls short.

26

### 4. Daily Activities

Lastly, Plaintiff asserts that "[t]he ALJ committed a reversible error by relying on limited daily activities performed by [Plaintiff] as support for the hearing decision's [RFC] assessment without considering the limited extent to which [Plaintiff] can perform such activities." (Docket Entry 17 at 14 (bold font and block formatting omitted); see also Docket Entry 20 at 5-6.) In that regard, Plaintiff points out that the Fourth Circuit "held in *Woods v. Berryhill* that an '[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them.'" (Docket Entry 17 at 14 (quoting Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)).) Plaintiff faults the ALJ for finding that Plaintiff's ability to take his daughter to school and prepare simple meals showed "'an ability to stand and walk for short stretches, lift and carry light items, and do some fine and gross manipulation'" (id. at 15 (quoting Tr. 29)), because 1) "[t]he ALJ disregarded . . . additional testimony by which [Plaintiff] described that his 'simple' meal preparation was infrequent at best, that his two older daughters actually took care of either providing or preparing meals, that he was unable to do yardwork, [and] that his daughters did almost all of the household chores" (id. at 17; see also id. at 15-17 (describing additional testimony

(citing Tr. 63-64, 115-16))); 2) "[t]he ALJ [] disregarded the fact that there was no testimony at the June 2020 hearing that [Plaintiff] continued to take his younger daughter to school" (id. at 17); and 3) "there is no evidence to support the ALJ's allegation that taking [Plaintiff]'s younger daughter to school in March 2017 and preparing 'simple' meals required [Plaintiff] to be able to 'stand and walk for short stretches' or to 'lift and carry light items'" (id.). For the reasons further discussed below, Plaintiff's contentions fail to demonstrate prejudicial error by the ALJ.

SSR 16-3p, consistent with the Commissioner's regulations, adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by

28

the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

29

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then determined, at part two, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms . . . [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 25.) The ALJ supported his part two finding with the following analysis:

> The objective medical evidence and [Plaintiff]'s treatment history are not entirely consistent with the allegations of the severity of physical functional limitations. Although [Plaintiff] alleges a limited ability to stand, walk, sit and lift, his physical exams and clinical observations generally demonstrated effective ambulation with a single-point cane, normal motor strength and intact sensation in all extremities, and normal cervical spine range of motion. Further [Plaintiff]'s reports of improvement of symptoms with pain medication and medial branch block treatment noted in the treatment records are inconsistent with [his] allegations of disabling back pain. Also, the extent of [Plaintiff]'s activities of daily living, including taking his daughter to and from school and preparing

30

simple meals, is inconsistent with [Plaintiff]'s
allegations of extreme physical functional limitation.

. . .

The [RFC] is also consistent with [Plaintiff]'s
<u>activities of daily living</u>. For instance, [Plaintiff]
testified that he takes his daughter to and from school
about half the days, and can prepare his own simple
meals. These activities require an ability to stand and
walk for short stretches, lift and carry light items, and
do some fine and gross manipulation with the upper
extremities. Thus, a limitation to sedentary work with
additional assistive device, postural, manipulative, and
workplace environmental limitations adequately accounts
for [Plaintiff]'s reported range of physical limitations.

(Tr. 26-29 (emphasis added) (internal parenthetical citations
omitted).) None of Plaintiff's challenges to that analysis carry
the day.

First, Plaintiff maintains that "[t]he ALJ
disregarded . . . additional testimony by which [Plaintiff]
described that his 'simple' meal preparation was infrequent at
best, that his two older daughters actually took care of either
providing or preparing meals, that he was unable to do yardwork,
[and] that his daughters did almost all of the household chores."
(Docket Entry 17 at 17; <u>see also</u> <u>id.</u> at 15-17 (describing
additional testimony (citing Tr. 63-64, 115-16)).) As an initial
matter, the ALJ did not find that Plaintiff remained able to
perform yardwork and/or household chores (<u>see</u> Tr. 25-30) and,
therefore, Plaintiff's testimony that he did not perform yardwork,
that he "ha[d] a dishwasher, so [he] d[id]n't have to wash dishes

31

by hand," and "usually" did not vacuum, sweep, or mop (Tr. 64) does not adversely impact the ALJ's finding that Plaintiff could prepare simple meals and take his daughter to school. Beyond that, the ALJ did not err by finding that Plaintiff "c[ould] prepare his own simple meals" (Tr. 29), as that accurately captures Plaintiff's testimony at the hearing (see Tr. 116 ("[I]f I do prepare something, it's – you know, it's nothing major. It's something pretty simple to do.")). Had the ALJ found that Plaintiff prepared simple meals regularly, consistently, or on a daily basis, Plaintiff's argument that the ALJ overstated the extent to which Plaintiff could prepare such meals might have more credence. Here, however, the ALJ did not err, because he found, consistent with Plaintiff's testimony (see Tr. 116), that he could prepare simple meals, without assigning a frequency to that task (see Tr. 29; see also Tr. 26). See O'Neil v. Astrue, No. 8:07CV1074, 2008 WL 1930584 at *3 (M.D. Fla. Apr. 30, 2008) (unpublished) ("[T]he ALJ's paraphrasing is close to [the p]laintiff's actual testimony. [The p]laintiff testified that she performed household chores; the ALJ stated that [the p]laintiff performed household chores. . . . The mere fact that the ALJ declined to quote [the p]laintiff directly does not render [the ALJ's] opinion deficient.")

Second, Plaintiff argues that "[t]he ALJ [] disregarded the fact that there was no testimony at the June 2020 hearing that [Plaintiff] continued to take his younger daughter to school."

32

(Docket Entry 17 at 17.) That argument, however, glosses over the fact that Plaintiff's insured status for DIB expired on December 31, 2013 (see Tr. 20, 22), and, thus, the absence of testimony regarding Plaintiff's continuing ability to take his daughter to and from school at his June 2020 hearing holds no relevance to the ALJ's evaluation of Plaintiff's ability to engage in daily activities during the relevant period in this case ending on December 31, 2013.

Third, Plaintiff contends that "there is no evidence to support the ALJ's allegation that taking [Plaintiff]'s younger daughter to school in March 2017 and preparing 'simple' meals required [Plaintiff] to be able to 'stand and walk for short stretches' or to 'lift and carry light items.'" (Docket Entry 17 at 17 (quoting Tr. 29).) Assuming that Plaintiff's testimony referred to driving his daughter to and from school (see Tr. 116 ("I have to take my daughter, my youngest daughter, to and from school, on the days she's with me." (emphasis added))), the ability to drive does not necessarily demonstrate an ability to stand, walk, lift, or carry. However, Plaintiff's ability to prepare simple meals, even infrequently, shows that he maintained some ability to stand, walk, and lift/carry small items. See McManigal v. Berryhill, No. 1:16CV324, 2017 WL 4341846, at *9 (D. Idaho Sept. 29, 2017) (unpublished) (holding that the plaintiff's "ability to perform daily activities such as laundry, cooking, and grocery

33

shopping showed that he was capable of reaching and lifting at least light items" (emphasis added)); Randall v. Soc. Sec. Admin. Comm'r, No. CV-13-2025, 2014 WL 5432138, at *5 (D. Ariz. Oct. 24, 2014) (unpublished) (finding that "[the p]laintiff's ability to cook meals, pick up after herself, and carry laundry demonstrates that she is capable of occasionally lifting and carrying small items" (emphasis added) (internal quotation marks omitted)); Maslow v. Commissioner of Soc. Sec., No. CIV. 07-1876, 2008 WL 2115096, at *10 (D.N.J. May 19, 2008) (unpublished) ("[The p]laintiff's testimony regarding her daily life activities — doing light shopping, preparing meals, making the bed, doing the dishes, maintaining grooming and hygiene needs independently, and socializing with friends — demonstrates her ability to perform basic work activities, such as walking, standing, carrying, and handling." (emphasis added)).

Moreover, to the extent the ALJ erred by relying on Plaintiff's ability to take his daughter to and from school to support the RFC's standing, walking, lifting, and carrying limitations, that error remains harmless under the circumstances of this case. See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As the above-quoted analysis by the ALJ shows, in

34

evaluating the intensity of Plaintiff's subjective symptoms, the ALJ also appropriately relied on findings of "effective ambulation with a single-point cane," normal strength, intact sensation, no atrophy, and no loss of balance, as well as Plaintiff's statements to his treatment providers describing relief from his pain medications and medial branch blocks. (Tr. 26.) Accordingly, Plaintiff cannot establish prejudice. See Krystal H. v. Saul, No. 4:19CV5, 2020 WL 5526499, at *6 (W.D. Va. July 20, 2020) (unpublished) (deeming ALJ's error in "consider[ing] the type of daily activities [the plaintiff] could perform without explicitly considering her testimony describing the limited extent to which she could perform them . . . harmless . . . because the ALJ gave other legally adequate reasons to support his credibility and RFC assessments, and those reasons are supported by substantial evidence in the record"), recommendation adopted, 2020 WL 6047756 (W.D. Va. Oct. 13, 2020) (unpublished).

In sum, Plaintiff's fourth and final issue on review lacks merit.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

35

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this matter be dismissed with prejudice.

                                    /s/ L. Patrick Auld
                              **L. Patrick Auld**
                     **United States Magistrate Judge**

January 26, 2024

Case 1:21-cv-00141-WO-LPA   Document 21   Filed 01/26/24   Page 36 of 36